**James CHANCE, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 406, 1995.

Supreme Court of Delaware.

Submitted: Oct. 8, 1996.
Decided: Nov. 8, 1996.[1]
Rehearing Denied Dec. 18, 1996.

---

4. *Commonwealth v. Elmore*, 508 Pa. 81, 494 A.2d 1050, 1053 n. 4 (1985).

1. The August 13, 1996 Order is vacated and this Opinion is issued in lieu thereof.

Joseph M. Bernstein, Wilmington, for Appellant.

John Williams (argued), and Daniel R. Miller, Deputy Attorneys General, Department of Justice, Dover, for Appellee.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT and BERGER, JJ., constituting the Court en Banc.

HOLLAND, Justice:

This criminal proceeding originated from the beating death of Michael Keesser ("Keesser"). After a jury trial in the Superior Court, the defendant-appellant, James A. Chance ("Chance"), was convicted of Murder in the Second Degree. Chance was sentenced to sixteen years of incarceration, followed by four years of probation. This is Chance's direct appeal.

There are two issues before this Court. According to Chance, the Superior Court committed plain error. First, Chance alleges that the Superior Court erred when it gave the jury an instruction with regard to Chance's liability for a consequential crime in furtherance of an agreed upon unlawful act. Chance argues this instruction was incorrect because this case does not involve a felony murder. Second, Chance argues that the Superior Court erred when it failed to include in its jury instructions on accomplice liability an explicit statement requiring the jury to consider Chance's individual mental culpability in determining his degree of guilt for Keesser's death. *See* 11 *Del.C.* § 274.

This Court has concluded that the Superior Court's instruction with regard to Chance's liability as an accomplice for consequential crimes was correct. Thus, Chance's first contention is without merit. This Court has also concluded that the Superior Court's omission of an instruction in accordance with 11 *Del.C.* § 274 ("Section 274") in the initial charge to the jury, and in the supplemental response to the jury's accomplice liability question during deliberations, did not constitute plain error. Therefore, the judgment of the Superior Court must be affirmed.

### Facts of Crime

On August 19, 1994, Chance attended a party hosted by his friend, Paul Lunsford ("Lunsford"). Prior to arriving at the party, Chance had spent the day drinking heavily. He described himself as "crazy."

Keesser came to the party with a group of friends. Keesser remained with them, rather than mixing with the other guests. This apparently angered Chance, who told several people that there would be a fight with the Keesser group.

Chance began to provoke fights with other guests at the party. Chance eventually accosted one of Keesser's friends at the party. When a general fight ensued inside of Lunsford's house, Keesser decided to leave the party. Keesser left the backyard and walked toward his car with his keys in hand.

Keesser was accosted before he reached his vehicle. Keesser was then beaten by James Mayhall ("Mayhall"), Joshua Holder ("Holder"), James Bonds ("Bonds"), and Chance. Lunsford and other party guests witnessed Chance repeatedly kicking Keesser in the head. Keesser was left motionless in the street. Attempts to resuscitate Keesser failed. He died a short time later.

Chance and the other assailants were each charged separately with Murder in the Second Degree.[2] In November, 1995, Bonds entered a guilty plea to Manslaughter. In March, 1996, Holder was convicted of Manslaughter. Although the charges against Mayhall were pending at the time of Chance's trial, Chance was tried alone.

### Prayer Conference

Before instructing the jury at the conclusion of Chance's trial, the Superior Court held a prayer conference with the attorneys. During the prayer conference, Chance's attorney requested lesser-included jury instructions on Assault in the First, Second, and Third Degree. The State objected to any lesser-included assault instructions. The Superior Court decided to instruct the jury as to Assault in the First and Second Degree. The Superior Court reasoned that if the jury concluded Chance was acting alone, rather than as an accomplice, and that he did not cause the death of Keesser, Chance would be guilty only of a felonious assault.

After the Superior Court's ruling, Chance withdrew his prior request for an instruction on Assault in the Third Degree. Chance made no other request and noted no other objection to the proposed jury charge at the prayer conference. In particular, Chance neither requested a jury instruction incorpo-rating the language of Section 274, nor noted any objection to the absence of such an instruction.

### Original Jury Instructions

At the conclusion of the trial, the Superior Court charged the jury to determine whether Chance was guilty, as indicted, as a principal of Murder in the Second Degree, or of any of the four lesser-included crimes of Manslaughter, Criminally Negligent Homicide, Assault in the First Degree, and Assault in the Second Degree. At the State's request, the Superior Court also charged the jury on the State's alternative theory that Chance could be held liable as an accomplice. The Superior Court instructed Chance's jury on accomplice liability as to the charge of Murder in the Second Degree and the same four lesser-included crimes. Chance's trial attorney did not make any objection to the original jury instructions.

### Supplemental Jury Instructions

During the second day of jury deliberations, the Superior Court received two questions from the jury. The first question asked if Chance could be charged, as a principal, with Murder in the Second Degree if his actions alone did not cause the death. The second question asked if Chance could be guilty of Murder in the Second Degree, as an accomplice, if his actions alone did not cause the death.

After conferring with the attorneys, the Superior Court responded to the jury as follows:

> Question number two deals with the liability of a person for an offense committed by another person. I have already instructed you on this subject and will amplify the instruction as follows.

> A person is guilty of an offense committed by another person when intending to promote or facilitate the commission of the offense he aids, counsels or agrees or attempts to aid the other person in planning or committing it. Where there is a crime

---

**2.** The charge in the indictment returned against Chance stated: "James A. Chance, Jr. on or about the 19th day of August, 1994, in the County of Kent, State of Delaware, did recklessly cause the death of Michael Keesser under circumstances which manifest a cruel, wicked and depraved indifference to human life by kicking and punching said Keesser continuously."

committed and there are two, three or four people involved, if a person is present at or near the scene of the crime aiding or counseling the other or others in committing the offense, then under the law of this state he is equally guilty with the person or persons who actually commit the crime. Furthermore, aiding as used in the statute refers to assisting in helping with the actual commission of the crime.

Before the Superior Court gave the foregoing response to the jury's question, Chance's attorney did not request any instruction incorporating the statutory language of Section 274 or object to the absence of such an instruction.

### Chance's Contentions

Chance's first contention is that the Superior Court committed plain error in instructing the jury that, if it found a principal-accomplice relationship existed between the participants with respect to a particular unlawful act, the jury was not required thereafter to find that he specifically intended the result of a consequential crime which occurs. In this case, that portion of the charge to the Chance jury stated:

It is the law that all persons who join together with a common intent and purpose to commit an unlawful act which, in itself, makes it foreseeable that a crime not specifically agreed upon in advance might be committed, are responsible equally as principals for the commission of such an incidental or consequential crime, whenever the second crime is one in furtherance of or in aid to the originally contemplated unlawful act.

Chance acknowledges that the foregoing instruction is appropriate where there is both an underlying crime and a consequential crime, such as a felony-murder scenario. *See Claudio v. State*, Del.Supr., 585 A.2d 1278, 1281–82 (1991). Chance argues, however, that this instruction is inappropriate in his case because the assault would merge into the homicide.

Chance's second contention is that the Superior Court erred in failing to instruct the jury that it must determine Chance's personal mental culpability pursuant to Section 274. Section 274 provides:

**§ 274. Offenses involving 2 or
more persons; convictions
for different degrees of offense.**

When, pursuant to § 271 of this title, 2 or more persons are criminally liable for an offense which is divided into degrees, each person is guilty of an offense of such degree as is compatible with that person's own culpable mental state and with that person's own accountability for an aggravating fact or circumstance.

Chance argues that the jury should have been focused on his mental culpability, not that of any principal or accomplice, in deciding whether he was guilty, as an accomplice, of Murder in the Second Degree or one of the lesser-included crimes. According to Chance, this omission constituted plain error.

### Standard of Review

■ Chance's trial attorney did not make any objections to the original or supplemental instructions given to the jury by the Superior Court. This Court will generally decline to review contentions neither raised nor fairly presented to the trial court for decision. *Probst v. State*, Del.Supr., 547 A.2d 114, 119 (1988). Accordingly, the failure to object at trial usually constitutes a waiver of a defendant's right to raise the issue on appeal unless the error is plain. *Id.* Under that standard of appellate review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process. *Wainwright v. State*, Del.Supr., 504 A.2d 1096, 1100, *cert. denied*, 479 U.S. 869, 107 S.Ct. 236, 93 L.Ed.2d 161 (1986).

■ We must first determine whether the Superior Court's jury instructions were erroneous, as a matter of law. If that inquiry is answered affirmatively, we must then determine whether those errors undermined the ability of the jury "to intelligently perform its duty in returning a verdict." *Probst v. State*, 547 A.2d at 119. The Superior Court's instructions will not constitute plain error if they are "reasonably informative and not misleading, judged by common practices and standards of verbal communication." *Id.*

## History and Origins
### Delaware Criminal Code

In 1965, as part of a national movement to review American substantive criminal law, former Chief Justice and then Governor, Charles L. Terry, Jr., appointed a committee to study the need for criminal law reform in Delaware. DELAWARE CRIMINAL CODE WITH COMMENTARY Introduction (1973). The co-chair of that committee was E. Norman Veasey, the current Delaware Chief Justice, who was then a practicing attorney. *Id.* That committee proposed a criminal code for Delaware in 1967. *Id.*

After years of additional study, the Delaware Criminal Code passed both houses of the General Assembly and was approved by the Governor on July 6, 1972. *Id.* "The changes that were made in the proposed Code were primarily to increase certain penalties, to include certain specific offenses which had been omitted as unnecessary in view of the definition of other offenses in the proposed Code and to introduce other changes which were thought to be in the interest of improved law enforcement." *Id.*

After passage of the Code, a new committee "was established to supervise revision and updating of the commentary on the Code and to arrange for publication and dissemination of the Code in its final form." *Id.* The chairman of that committee was Justice Joseph T. Walsh, who was then a Superior Court Judge. *Id.* Following the new committee's efforts, the revised Delaware Criminal Code was implemented in 1973.

The provisions that were ultimately adopted for Delaware are primarily a composite of the Model Penal Code and the New York Penal Law. *Id.; see also* PROPOSED DELAWARE CRIMINAL CODE WITH COMMENTARY Appendix C (1967). The provisions that are relevant to Chance's appeal are 11 *Del.C.* § 271 ("Section 271") and Section 274. Section 271 of the Delaware Code is based upon Model Penal Code Section 2.06(1)–(3).

PROPOSED DELAWARE CRIMINAL CODE WITH COMMENTARY Appendix C (1967). Section 274 is based upon Section 20.15 of the New York Penal Law and has no counterpart in the Model Penal Code. *Id.* In fact, only approximately four other states have a provision that corresponds with Delaware's Section 274.[3] *See* MODEL PENAL CODE AND COMMENTARIES Part I, 322 n. 71 (1985).

## Comparison
### Delaware Code § 271
### Model Penal Code § 2.06

Delaware's statutory accomplice liability law has abandoned the common-law distinctions between principals and accessories. *See* DELAWARE CRIMINAL CODE WITH COMMENTARY 48 (1973). Section 271, generally, "makes a person guilty of an offense committed by another person if an appropriate degree of complicity in the offense can be proved." *Id.* Section 271 is substantially the same as Section 2.06(1)–(3) of the Model Penal Code. *See* PROPOSED DELAWARE CRIMINAL CODE WITH COMMENTARY Appendix C (1967).

Both of the contentions presented by Chance in this appeal relate to his liability for unanticipated results that occur from conduct for which he is responsible under Section 271(2). The commentary to Section 2.06(3) of the Model Penal Code, the provision upon which Section 271(2) is based, suggests that a defendant's "liability for unanticipated occurrences rests upon two factors: his complicity in the conduct that causes the result, and his culpability towards the result to the degree required by the law, that makes the result criminal." MODEL PENAL CODE AND COMMENTARIES Part I, 321 (1985). Using the crime of manslaughter as its example, the following hypothetical case is set forth in the commentary to the Model Penal Code as an illustration:

**3.** ARK.CODE ANN. § 5–2–406 (1987); HAW.REV.STAT. § 702–226 (1993); MO.REV.STAT. § 562.051 (1979); N.Y.PENAL LAW § 20.15 (McKinney 1987); *see State v. Ervin,* Mo.Supr., 835 S.W.2d 905 (1992) *(en Banc ), cert. denied,* 507 U.S. 954, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993); *State v. White,* Mo.Supr., 622 S.W.2d 939 (1981) *(en Banc ), cert. denied,* 456 U.S. 963, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982); *see also Maiorino v. Scully,* S.D.N.Y., 746 F.Supp. 331 (1990); *Bosnick v. State,* 248 Ark. 846, 454 S.W.2d 311 (1970); *People v. Castro,* 55 N.Y.2d 972, 449 N.Y.S.2d 184, 434 N.E.2d 253 (1982).

Assume a classic case of manslaughter, where A [Chance] agrees to aid B in the performance of conduct that creates a risk of death, and that in fact causes a death. B, based on his recklessness, can be convicted of manslaughter. Of what offense is A [Chance] liable under this provision?

*Id.* at 322 n. 71.

The commentary to the Model Penal Code suggests there are at least three ways to interpret the language found in the subsections of Delaware Criminal Code Section 271(2) [4] to render A liable for manslaughter. *Id.* First, the word "cause" in Subsection (2)(a) could be construed to cover the hypothetical case. Subsection (2)(a) could then be applied to any situation in which a person could be said to have "caused" another person's conduct. *Id.* According to the Model Penal Code commentators, this "would have the effect, in such cases, of rendering [Subsection (2)(b)] superfluous and undercutting the requirement of purposeful aid." *Id.* Second, the Model Penal Code commentators suggest that the prefatory language in Section 271(2) could be emphasized in construing Subsection (2)(b). In the hypothetical case, A could be held for the homicide "because he intended that '[the] offense' (assault, or some other minor crime) be committed by B." *Id.* The Model Penal Code commentators view this second alternative as a form of strict liability which would "hold A liable for one offense because he meant to engage in another." *Id.* The third alternative identified by the Model Penal Code commentators is to read the traditional common law "proximate consequence" theory into Section 271(2) to provide additional liability beyond the express language in the statute. *Id.*

After advancing these possible interpretations, the commentators to the Model Penal Code reach two conclusions: first, that none of their three alternative constructions for

the Model Penal Code analogue of Section 271(2) is satisfactory; and second, that it is also unsatisfactory for A in the hypothetical case to escape liability for the manslaughter. *Id.*

## Comparison
### Delaware Code § 274
### Model Penal Code § 2.06(4)

Therefore, the Model Penal Code commentators decide that, if A is to be held culpable for manslaughter in the hypothetical case, "some provision based on Subsection (4) of the Model Penal Code is essential." MODEL PENAL CODE AND COMMENTARIES Part I, 322 n. 71 (1985). That subsection provides:

> When causing a particular result is an element of an offense, an accomplice in the conduct causing such result is an accomplice in the commission of that offense if he acts with the kind of culpability, if any, with respect to that result that is sufficient for the commission of the offense.

*Id.* § 2.06(4), at 470. According to the Model Penal Code commentary:

> Subsection (4) makes it clear that complicity in conduct causing a particular criminal result entails accountability for that result so long as the accomplice is personally culpable with respect to the result to the extent demanded by the definition of the crime. Thus, if the accomplice *recklessly endangers life by rendering assistance to another*, he can be convicted of manslaughter if a death results, even though the principal actor's liability is at a different level. In effect, therefore, the homicidal act is attributed to both participants, with the liability of each measured by his own degree of culpability toward the result.

*Id.* at 321.

Although Delaware did not enact Section 2.06(4) of the Model Penal Code, the result

---

**4. § 271. Liability for the conduct of another— Generally.**

A person is guilty of an offense committed by another person when:

. . .

(2) Intending to promote or facilitate the commission of the offense the person:

a. Solicits, requests, commands, importunes or otherwise attempts to cause the other person to commit it; or
b. Aids, counsels or agrees or attempts to aid the other person in planning or committing it; or
c. Having a legal duty to prevent the commission of the offense, fails to make a proper effort to do so. . . .

the Model Penal Code sought to accomplish with Subsection (4) was achieved in Delaware by superimposing Delaware's prior law upon the construction of Section 271(2) and adopting Section 274. Under Delaware's law prior to the enactment of Section 271, the person who actually performs the criminal act is the principal, however,:

> all persons who join together with a common intent and purpose to commit an unlawful act which, in itself, makes it not improbable that a crime not specifically agreed upon in advance might be committed, are responsible equally as principals for the commission of such an incidental or consequential crime, whenever the second crime is one in furtherance of or in aid to the originally contemplated unlawful act.

*State v. Winsett,* Del.Super., 205 A.2d 510, 516 (1964); *accord Claudio v. State,* Del. Supr., 585 A.2d 1278, 1281–82 (1991); *Hooks v. State,* Del.Supr., 416 A.2d 189 (1980).

In addition to superimposing its prior construction of accomplice liability for consequential crimes, when Section 271 of the Delaware Criminal Code was adopted, however, Delaware also enacted Section 274:

> When, pursuant to § 271 of this title, 2 or more persons are criminally liable for an offense which is divided into degrees, each person is guilty of an offense of such degree as is compatible with that person's own culpable mental state and with that person's own accountability for an aggravating fact or circumstance.

11 *Del.C.* § 274.[5] Because Section 274 incorporates Section 271 by reference, the use of the word *offense* in Section 271 and the use of that same word in Section 274 must be construed *in pari materia.* The applicable language in Section 271 provides: "A person

is guilty of an *offense* committed by another when ... [i]ntending to promote or facilitate the commission of the *offense* the person...." 11 *Del.C.* § 271 (emphasis added). The applicable provision in Section 274 states: "When, pursuant to § 271 of this [Criminal Code], 2 or more persons are criminally liable for an *offense* which is divided into degrees, each person is guilty of an *offense* of such degree as is compatible with that person's own culpable mental state...." 11 *Del.C.* § 274 (emphasis added).

When Section 274 is combined with Delaware's prior law on accomplice liability for consequential criminal acts, the result is the same one envisioned by Section 2.06(4) of the Model Penal Code. Therefore, applying Delaware law to the hypothetical case, even though A is liable for the *offense* of homicide that results from an agreement to aid B in an unlawful assault, the *degree of homicide offense* for which A and B are guilty depends upon their own respective "culpable mental states." 11 *Del.C.* § 274. In fact, the Delaware commentary expressly provides that Section 274 "allows one party to be convicted of first-degree murder, for example, when the other's mental culpability makes him [or her] guilty only of second degree murder." DELAWARE CRIMINAL CODE WITH COMMENTARY 52–53 (1973).[6]

### Consequential Crimes
#### Accomplice Liability Generally

■ In Chance's case, the unlawful act was the assault on Keesser and the consequential offense not specifically agreed upon in advance was the homicide. Chance argues that an instruction with regard to accomplice liability for an offense that is consequential to the originally contemplated unlawful act

---

5. The commentators to the Model Penal Code note that Delaware's Section 274 would not, in itself, resolve the hypothetical case "under discussion because a determination of degree must follow a decision regarding complicity." MODEL PENAL CODE AND COMMENTARIES Part I, 323 n. 71 (1985). Accordingly, the Delaware committees accomplished the functional equivalent of Section 2.06(4) of the Model Penal Code by combining the enactment of Section 274 with a continuation of Delaware's prior law on accomplice liability for consequential crimes.

6. "This section is consistent with § 272 in permitting imposition of a deserved penalty no matter what penalty the other parties received. It allows one party to be convicted of first-degree murder, for example, when the other's mental culpability makes him guilty only of second-degree murder. The former Delaware law would appear to work one way only, permitting a lesser punishment for accomplice than for principal. But there is no logic supporting this position. The proper test is the actor's personal mental culpability." DELAWARE CRIMINAL CODE WITH COMMENTARY 52–53 (1973).

should only be given in a felony-murder situation. This Court explained why Chance's contention is without merit in *Collins v. State*, Del.Supr., No. 232, 1994, 1995 WL 120655 Holland, J. (Mar. 10, 1995) (ORDER).

In *Collins*, the victim was unable to identify which assailant assaulted him during the commission of a robbery. *Id.* The State sought to hold Collins responsible for the assault committed during the course of the robbery on the theory of Section 271(2) accomplice liability. *Id.* This Court held that the Superior Court properly instructed the jury that if it found that Collins was an accomplice to the robbery, he could be held responsible for all reasonably foreseeable consequential criminal offenses committed by his confederates in furtherance of the robbery. *Id.*

In *Collins*, the Superior Court instructed the jury that it could find Collins guilty of acts performed by another if it found beyond a reasonable doubt that Collins "intended, that is, it was his conscious object or purpose, to promote or facilitate the commission of the offense" and Collins had "aided, counseled, or agreed ... to aid the other person in committing the offense." *Id.* The Superior Court's instructions then continued:

> Further, if you unanimously find beyond a reasonable doubt that a principal-accomplice relationship existed between the participants with respect to the robbery and you find it is [reasonably] foreseeable that as a consequence of the robbery other offenses might be committed in furtherance of the robbery, then all participants are equally responsible for the consequential crime or crimes without the jury having to find a defendant specifically intended the result of the consequential crime or crimes.

*Id.*

If the Chance jury unanimously found beyond a reasonable doubt that a principal-accomplice relationship existed between Chance and others with respect to the assault on Keesser, then each of them could be held responsible for the consequential death of Keesser without the jury having to find that Chance specifically intended the result of the consequential offense, *i.e.*, homicide.

The record reflects that the Superior Court's initial charge to the Chance jury fairly conveyed that import. Accordingly, although the instruction to the Chance jury with regard to general liability for a consequential offense was not as precise as the instruction in *Collins*, the instruction as given to the Chance jury was not erroneous. *Cf. Probst v. State*, Del.Supr., 547 A.2d 114 (1988).

### Accomplice Liability
#### Consequential Crimes
#### Offense Divided Into Degrees

The second contention raised by Chance in this appeal relates to the Superior Court's instructions to the jury with regard to Chance's liability as an accomplice in view of Delaware's adoption of Section 274. A similar problem was addressed by this Court in *Travis v. State*, Del.Supr., No. 199, 1993, 1993 WL 541923 Moore, J. (Dec. 22, 1993) (ORDER). Not only are the facts of the fatal assault in *Travis* similar to the Chance proceeding, but the *Travis* jury also sent out a note during deliberations containing questions about accomplice liability.

Travis and a co-defendant Anderson were charged with Murder in the First Degree in the beating and kicking death of an adult male. *Id.* While the victim was lying on the ground, Travis kicked him. *Id.* At the same time, Anderson beat the victim repeatedly on the head with a baseball bat. *Id.* The *Travis* jury was instructed on accomplice liability under Section 271(2)(b) with regard to Murder in the First and Second Degree, and Manslaughter. *Id.* During its deliberations, the jury in *Travis* inquired as to whether a defendant could be found guilty as an accomplice to a lesser-included crime than the crime committed by the principal. *Id.* The jury in *Travis* also asked: "Does being an accomplice require the Defendant to have a [conscious] intent to commit the crime committed by the principal?" *Id.* In *Travis*, the Superior Court answered both jury questions in the affirmative. *Id.* The answer to the first question was clearly correct. 11 *Del.C.* § 274.

On appeal, Travis contended that the Superior Court incorrectly answered the second question in the affirmative. Travis had not

presented that issue to the Superior Court. Therefore, that claim was reviewed by this Court for plain error. *See* Del.Supr.Ct.R. 8.

In *Travis*, this Court determined that, because Delaware's prior construction of accomplice liability had survived the enactment of Section 271, an accomplice is not required to have intended the consequential offense committed by the principal. *Travis v. State*, Del.Supr., No. 199, 1993, Moore, J. (Dec. 22, 1993) (ORDER). This Court concluded that, although the second question should have been answered in the negative, as Travis argued, the Superior Court's response caused Travis no prejudice because the "erroneous instruction actually placed a higher burden on the State than it had under 11 *Del.C.* § 271." *Id.* Thus, the Superior Court's incorrect instruction actually aided, rather than prejudiced, Travis, and this Court held there was no plain error. *Id.*

## No Plain Error
### Chance Jury Instructions

■ The problem identified by Chance in this appeal relates to Chance's liability as an accomplice. Chance contends that the Superior Court should have instructed the jury to assess Chance's guilt for the degree of homicide offense in accordance with his own culpable mental state, pursuant to Section 274. According to Chance, the omission of such an instruction constituted plain error.

■ In Chance's case, the use of the word "offense" in Section 271 and Section 274 is reconciled by construing it to mean "homicide." Accordingly, as a matter of Delaware law, the jury was required to distinguish between Chance's liability for the *offense* of homicide and Chance's culpability for the degree of homicide, *i.e.*, the *crime* of Murder in the Second Degree, Manslaughter or Criminally Negligent Homicide.[7] The latter determination was dependent upon the jury's assessment of Chance's own culpable mental

state without regard to another participant's guilt for a different degree of homicide.

The questions from the jury demonstrate that it properly understood its task. The first question asked if Chance could be charged, as a principal, with Murder in the Second Degree if his actions alone did not cause the *"death."* The second question asked if Chance could be guilty of Murder in the Second Degree, as an accomplice, if his actions alone did not cause the *"death."*

The comments by Chance's trial attorney in response to the jury's questions reflect that he also understood the jury to be asking about Chance's liability as either a principal or accomplice for causing the *death*, i.e., the *offense* of homicide.

My thought was or what the defense would request would be is that since this is a case in which the State's theory is two-fold; that is, one, that he is the person that caused the **death** or he is the principal and, two, that he is an accomplice to someone else who caused the **death**, my request was going to be you instruct the jury that they must find either that Mr. Chance himself caused the **death** or that he aided and abetted others who caused the **death** and the causation language obviously I would leave up to Your Honor, but it seems to me that's what the primary thrust of the note is and I don't want to stray too far from the language from the defense point of view of the statutes given the instructions that have already been given on causation.

The questions from the jury reflect that it understood it was required initially to determine Chance's liability for the homicide, *i.e.*, death, and thereafter Chance's liability for the degree of homicide. After the jury determined Chance's liability for the death, it would assess Chance's degree of culpability in accordance with the hierarchy of instructions given for the crime of Murder in the

7. Except for the specific factual scenarios involved in subsections (a)(2) through (7) of 11 *Del.C.* § 636, Murder in the First Degree requires a finding that the defendant acted "intentionally." 11 *Del.C.* § 636. Murder in the Second Degree requires a finding that the defendant acted "recklessly" and "under circumstances which

manifest a cruel, wicked and depraved indifference to human life." 11 *Del.C.* § 635. Manslaughter requires a finding that the defendant acted "recklessly." 11 *Del.C.* 632. Criminally Negligent Homicide requires a finding that the defendant acted with "criminal negligence." 11 *Del.C.* § 631.

Second Degree and the series of lesser-included crimes.

Pursuant to those instructions, the jury could have found that, even though Chance was a participant in the beating, his own culpable mental state was different from those of the other participants. The jury instructions for each of the lesser-included crimes permitted the jury to return a verdict for the degree of homicide that was commensurate with its determination of Chance's own culpable mental state. Therefore, although the Superior Court's instructions to the Chance jury should have included the provisions in Section 274,[8] the omission of that specific instruction to the Chance jury did not constitute plain error. *Cf. Probst v. State*, Del.Supr., 547 A.2d 114 (1988).

### Conclusion

The judgment of the Superior Court is **AFFIRMED.**

### Appendix I

A person charged with committing an offense may be convicted either as a principal for acts he committed himself or as an accomplice to another person guilty of committing the offense. The pertinent section of the Delaware Criminal Code is as follows:

> A person is guilty of an offense committed by another person when, intending to promote or facilitate the commission of the offense, he aids, counsels, or agrees, or attempts to aid the other person in planning or committing it.

In the context of the quoted language, the word offense means homicide. In this case, with regard to accomplice liability, you must first decide if the homicide was the intended offense or an unintended consequential offense. You must then decide the defendant's degree of guilt. I will instruct you on both aspects of accomplice liability.

It is the law in Delaware that two or more persons in a principal-accomplice relationship are responsible for the commission of an intended offense. If you unanimously find beyond a reasonable doubt that a principal-accomplice relationship existed between the defendant and the other participant(s) with respect to causing the victim's death, and that homicide was the intended offense, because homicide is an offense which is divided into degrees, you must next decide what degree of guilt is compatible with the defendant's own culpable mental state. The possible degrees of guilt are: Murder in the Second Degree, Manslaughter, or Criminally Negligent Homicide, as I have explained those offenses to you.

The defendant is guilty of an offense in such degree as is compatible with his own culpable mental state. Therefore, all of the persons who joined together to cause the victim's death may not have had the same culpable mental state and therefore, need not be guilty of the homicide offense in the same degree.

It is also the law of Delaware that all persons who join together with a common intent and purpose to commit an unlawful act which, in itself, makes it foreseeable that a criminal offense not specifically agreed upon in advance might be committed, are responsible for the commission of such an incidental or consequential criminal offense, whenever the second offense is one in furtherance of or in aid to the originally contemplated unlawful act.

In that regard, if you unanimously find beyond a reasonable doubt that a principal-accomplice relationship existed between the defendant and the other participants to commit an unlawful assault upon the victim; and you find it is reasonably foreseeable that as a consequence of the unlawful assault that another offense might be committed in furtherance of the unlawful assault, then all participants are responsible for the consequential criminal offense without the jury having to find that the defendant specifically intended the result of the consequential criminal offense.

In this case, the agreed upon unlawful act would be assault and the consequential crimi-

---

8. One possible form of a Section 274 instruction is set forth in Appendix I. The instruction is intended to illustrate the facts of Chance's case, to wit: the trial of a single defendant, no charge of felony murder, no weapon, and an assault resulting in homicide where the homicide might be either the intended or a consequential offense.

nal offense would be a homicide because of the victim's death. Because homicide is an offense which is divided into degrees, if you find that the defendant and other persons are criminally liable for the victim's death, you must decide what degree of guilt is compatible with the defendant's own culpable mental state. The possible degrees of guilt are: Murder in the Second Degree, Manslaughter, or Criminally Negligent Homicide as I have explained those offenses to you.

Again, I remind you that all of the persons who joined together to commit an unlawful act that results in a consequential offense may not have the same culpable mental state and therefore, need not be guilty of the consequential offense in the same degree.

If you unanimously find beyond a reasonable doubt that a principal-accomplice relationship existed between the defendant and the other participants with respect to the unlawful assault, but you find it was not reasonably foreseeable that as a consequence of the unlawful assault the homicide offense might be committed, then you must decide the defendant's criminal liability for such degree of assault as is compatible with his own culpable mental state. The choices are: Assault in the First Degree or Assault in the Second Degree, as I have explained those offenses to you.