IN THE SUPREME COURT OF THE STATE OF DELAWARE

JORDON HARRIS, § 
§ No. 484, 2017
Defendant Below- §
Appellant, § Court Below: Superior Court
§ of the State of Delaware
v. §
§ ID. No. S1610001844B
STATE OF DELAWARE, §
§
Plaintiff Below- §
Appellee. §

Submitted: November 29, 2018[1]
Decided: December 5, 2018

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

## O R D E R

Upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1) At his October 2017 trial, the State alleged that the defendant, Jordon Harris, sold a handgun to an undercover police officer. Harris was prohibited from possessing a firearm because of a prior felony conviction. The Superior Court jury convicted Harris of one count of Possession of a Firearm by a Person Prohibited, and the Superior Court sentenced him to five years in prison. Harris was represented by

---

[1] Although the case first was submitted for decision on September 7, 2018, the necessary additional transcript was not filed with the Court until November 29, 2018.

counsel at trial in the Superior Court, but he waived his right to counsel and is now representing himself on direct appeal.

(2) The record at trial reflects that Detective Whitman of the Rehoboth Beach police department and Detective Bumgarner of the Dover police department, together with officers from other cooperating agencies, were engaged in an undercover operation involving the sale of a handgun. A cooperating individual ("CI") told Detective Whitman that Jordon Harris wanted to sell a handgun. Detective Bumgarner made arrangements through the CI to purchase the weapon from Harris in a meeting at a McDonald's parking lot in Rehoboth Beach. The police made photocopies of the $275 in currency that Detective Bumgarner would use to complete the sale.

(3) Around noon on July 19, 2016, the scheduled meeting time, Harris arrived at the McDonald's in a black Kia Optima. Detective Bumgarner, who was wearing a hidden listening device, exited the car he arrived in and got into the back seat of the Optima. Harris was in the driver's seat. The CI was in the front passenger seat. Harris told Detective Bumgarner to call him "J." Harris took the gun out from under the driver's seat, removed it from a bag, and showed it to the detective. After discussing the purchase price, Harris accepted the $275 in cash from the detective. Harris then took the gun back, wiped it down, and gave it back to the detective. Detective Bumgarner put the gun into a brown McDonald's paper bag and got out

2

of the car. Harris and Detective Bumgarner each drove out of the parking lot in their respective vehicles. To protect both the CI and Detective Bumgarner, Harris was not arrested at that time.

(4) Detective Whitman and ATF Agent Reisch watched the transaction from their position inside a vehicle parked in an adjacent parking lot and were able to listen in on the conversation inside the car. Agent Reisch also took a video of the transaction, which was shown at trial. Detectives Whitman and Bumgarner both testified at trial and identified Harris as the individual from whom Detective Bumgarner had purchased the gun. Although neither detective knew Harris before the gun transaction, they were able to identify him based on a Facebook photo they had seen of Harris with his brother from which the CI had identified Harris. Harris' defense at trial was misidentification.

(5) Harris enumerates seven issues in his opening brief on appeal. First, he contends that the Superior Court erred in denying his motion to compel the identity of the CI, who arranged the gun sale. Second, Harris contends that he was denied his constitutional right to confront a witness against him, i.e. the CI. Third, he contends that the Superior Court held an inadequate *Flowers*[2] hearing on his motion to compel. Fourth, he contends that the Superior Court erred in allowing certain photos and messages into evidence. Fifth, he contends that the prosecutor engaged

---

[2] *State v. Flowers*, 316 A.2d 564 (Del. Super. 1973).

3

in misconduct. Sixth, he contends that the trial judge was biased. Finally, he contends that the investigating officers engaged in misconduct and committed perjury.

(6) Harris' first three issues relate to the Superior Court's denial of his motion to compel the identity of the CI. The record reflects that Harris did not file his motion to compel until one week before his scheduled trial date. Despite the untimely motion, the Superior Court nonetheless granted Harris' request for a *Flowers* hearing and ordered the State to compel the CI, who was in Florida at the time, to appear in Delaware to be interviewed by the judge *in camera*. After holding the *in camera* interview, the Superior Court concluded that the CI was a witness to the transaction but was not a participant and had no information that would materially aid the defense. Thus, the Superior Court denied Harris' motion to compel the identity of the CI.

(7) In his opening brief, Harris argues that the Superior Court did not conduct a proper *Flowers* hearing and denied him his constitutional right to confront a witness against him by erroneously denying his motion to compel the CI's identity. We review the Superior Court's refusal to compel the disclosure of the identity of

the CI for abuse of discretion.[3]  An abuse of discretion occurs if the trial court's decision is based on unreasonable or capricious grounds.[4]

(8)     Under Delaware Uniform Rule of Evidence 509, the State has a privilege to refuse to disclose the identity of a CI in a criminal case unless it appears that the CI "may be able to give testimony [that] would materially aid the defense."[5] The defense has the burden of establishing, beyond mere speculation, that the CI's testimony would materially aid the defense.[6]

(9)     The rule of informer privilege in Rule 509 follows, in part, the Superior Court's holding in *State v. Flowers*, in which the court recognized four typical situations in which the issue of the disclosure of the CI's identity arises: (i) when the CI is used to establish probable cause for a search; (ii) when the CI witnesses the illegal transaction; (iii) when the CI participates in, but is not a party to, the illegal transaction; and (iv) when the CI is an actual party to illegal transaction.[7]  In the first situation, the State's privilege is protected.  In the last situation, the State must disclose the CI's identity.[8]  In the second and third situations, there is no general rule of disclosure or nondisclosure.  Rather, the trial court must look at the circumstances

---

[3] *Kennard v. State*, 2007 WL 2523022, *3 (Del. Sept. 6, 2007).
[4] *Waples v. State*, 2018 WL 3359271, *3 (Del. July 9, 2018)
[5] Del. Unif. R. Evid. 509(a), (c)(2).
[6] *Kennard v. State*, 2007 WL 2523022, at *3.
[7] *State v. Flowers*, 316 A.2d at 567.
[8] *Id.*

of the individual case to determine if the CI's testimony would materially aid the defense.[9]

(10)   In the present case, the video evidence established that the CI, at the least, witnessed the illegal transaction.  Although Harris knew the CI by first name, he did not know his full name.  The State represented that the CI did not want his identity disclosed for fear of retaliation.  The Superior Court thus ordered the State to produce the CI for an *in camera* interview with the judge.   After conducting the interview, the Superior Court concluded that the CI was a witness but not a party to the illegal transaction and that the CI had no information that would materially aid the defense.

(11)   After reviewing the record including the transcript of the *in camera* interview, we find no abuse of the Superior Court's discretion in denying Harris's motion for disclosure of the CI's identity.  The trial record supports the Superior Court's conclusion that the CI was present for, but was not a party to, the illegal transaction and that the CI did not have information that would materially aid Harris' defense.  Contrary to Harris' argument, the Superior Court's process in ruling on Harris' motion was more than adequate and fair.  Moreover, given that the CI did not provide any evidence or testimony against him, there is no basis for Harris'

---

[9] *Id.*

argument that he was denied his constitutional right to confront a witness against him.

(12) Harris next claims that the Superior Court erred in admitting certain photographs and "messages" into evidence. Harris does not specify what evidence he is referring to, and the trial record does not reflect the admission of any messages into evidence at trial. Accordingly, we conclude that this aspect of his argument has no basis in fact.

(13) With respect to his argument regarding the improper admission of photographs, the record reflects that Detective Whitman testified at trial that he viewed Harris' public Facebook page with the CI. The CI identified Harris from his Facebook cover photo, which showed Harris standing with his brother. That photo, along with another public Facebook photo of Harris standing in front of a black Kia Optima, were both admitted into evidence without objection.[10] Given Detective Whitman's testimony that the photos were indeed photos of Harris—a fact the jury could judge for itself—we conclude the photos were properly authenticated under Delaware Uniform Rule of Evidence 901.[11] Moreover, Harris' contention that his

---

[10] *See Chance v. State*, 685 A.2d 351, 354 (Del. 1996) (claims not raised to the trial court in the first instance are reviewed on appeal for plain error).
[11] Del. Unif. R. Evid. 901(a) (authentication is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims).

7

public Facebook photos were "illegally seized" has no merit.[12] We find no plain error in the Superior Court's admission of the photographs into evidence.

(14) Harris' remaining three claims, alleging prosecutorial misconduct, judicial bias, and witness perjury, are conclusory and unsubstantiated and were not raised in the proceedings below. We find no plain error on appeal.[13]

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ James T. Vaughn, Jr.
Justice

---

[12] *Everett v. State*, 186 A.3d 1224, 1229 (Del. 2018) (finding no reasonable expectation of privacy in shared social media posts).
[13] Supr. Ct. R. 8.