Sharon HAMILTON, Kelcee Jackson and Terri Walston, Defendants Below, Appellants,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 268,2001, 293,2001, 302,2001.

Supreme Court of Delaware.

Submitted: Oct. 22, 2002.
Decided: Feb. 6, 2003.
Reargument Denied March 4, 2003.

Joseph A. Gabay (argued) and Sheryl Rush–Milstead, Wilmington, for appellant, Sharon Hamilton.

Anthony A. Figliola, Jr., Figliola & Facciolo, Wilmington, for appellant, Kelcee Jackson.

Jerome M. Capone, Wilmington, for appellant, Terri Walston.

John Williams, Department of Justice, Dover, for appellee, State of Delaware.

Before VEASEY, Chief Justice, WALSH, HOLLAND, BERGER, and STEELE, Justices, constituting the Court En Banc.

WALSH, Justice:

This is a consolidated direct appeal by three defendants, Sharon Hamilton ("Hamilton"), Kelcee Jackson ("Jackson") and Terri Walston ("Walston"). They all appeal from final judgments of conviction that were entered by the Superior Court, following a bench trial. Each defendant was convicted of Assault in the Third Degree with regard to the attack on an adult female, Brandi Coleman ("Brandi"), who was twenty-two weeks pregnant. Each defendant was also convicted of Manslaughter with regard to the death of the twenty-two week old fetus, Tyriek Coleman ("Tyriek").

On appeal, all of the defendants argue that the Superior Court erred as a matter of law for three reasons. First, the defendants assert that the trial judge erred in permitting a feticide case to be tried as a homicide case. Second, they contend the trial judge erred when he did not permit the defendants to take expert depositions prior to trial and permitted the State's expert witness to testify without the State fully complying with Superior Court Criminal Rule 16's discovery requirements. Finally, the defendants assert that the trial judge erred when refusing to strike the testimony of Dr. Muench that was different from the information provided to defense counsel in discovery.

We conclude that the trial judge's finding that Jackson and Walston lacked the requisite state of mind to support a conviction of Murder Second Degree also precludes their conviction for Manslaughter. Similarly, the undisputed finding that Hamilton warned the other defendants of the victim's pregnancy precludes her conviction of any degree of an offense involving the fetus. Because the evidence clearly supports the verdicts, we affirm the judgments of conviction of Assault Third Degree on Brandi Coleman.

In addition to these common arguments, each defendant raises other contentions unique to her own appeal. Hamilton argues that the trial judge erred for three additional reasons specific to her convictions: the trial judge's application of title 11, section 271 of the Delaware Code; the trial judge's failure to apply title 11, section 274 of the Delaware Code; and the trial judge's decision to convict her of

Manslaughter when insufficient evidence existed to satisfy the statutory elements of the offense. Jackson and Walston raise the additional argument regarding their convictions that the trial judge erred in convicting them of Manslaughter when the State failed to prove beyond a reasonable doubt that they knew of Brandi's pregnancy. Walston further asserts that the trial judge erred: by allowing Brandi to testify about hearsay information regarding the identity of the individual who kicked her, and by permitting Brandi's statements to the police to be introduced as a section 3507 statement when it contained hearsay.

I

The defendants' convictions relate to events that occurred on March 27, 1998.[1] On that date, a fight occurred at Eastlawn Avenue which involved Hamilton, Jackson and Walston, as well as three additional defendants, Shyniece Moore, Kelene Thomas and Keesha Watson. At the time of the incident, the alleged victim, Brandi, was pregnant with the alleged victim, Tyriek.

It is undisputed that prior to the altercation, Hamilton and Kelene Thomas drove toward Eastlawn Avenue. At the intersection of Twenty–Ninth and Market Streets, Jackson and Walston, along with three other women, got into the car. They drove approximately one half of a mile to the 200 Block of Eastlawn Avenue. Upon arriving at Eastlawn Avenue, a fight ensued. During the course of that altercation, Brandi was knocked to the ground, beaten, and kicked.

After the fight, Brandi was taken to Christiana Care and admitted to the high-risk delivery unit because of the trauma she had suffered. She was experiencing contractions. The course of medical treatment decided upon because the fetus was twenty-two weeks old was to attempt to stop the contractions and maintain the fetus *in-utero*. This treatment initially appeared to be successful and the contractions virtually ceased.

On the afternoon of March 30th vaginal bleeding began to occur. The contractions resumed and Brandi became dilated. It was noted that blood was accumulating within her uterus. It was then decided that the best course of treatment was to promote a birth in the interest of the mother's safety. She was bleeding vaginally and would likely continue to do so unless a birth was induced.

At trial, the State and defense offered testimony from physicians present at the birth as part of their cases. Based upon that testimony, the trial judge found there is little conflict as to the facts. There is a strong dispute, however, as to the interpretation of those facts. The trial judge found it is undisputed:

1) That immediately prior to delivery, Tyriek's heart was beating.

2) After the birth, Tyriek had a slow and diminishing heartbeat for approximately seventeen minutes.

3) Tyriek had an APGAR of 1 and was not considered by any of the experts as "viable."

4) Tyriek showed no voluntary movement and had no respiration.

5) Tyriek was pronounced dead at 17:10, eighteen minutes after birth.

The trial judge noted that the common law has accepted a heartbeat or a pulsating umbilical cord as evidence of life *ex utero*.[2] The trial judge accepted that definition. The trial judge ruled that the State established that Tyriek was a person

---

**1.** The facts are taken, in part, from the Superior Court's opinion below.

**2.** *Stout v. Killen,* 10 Del. 14 (Del.Super.1875).

who could be the subject matter of a murder prosecution.

## II

Hamilton, Jackson and Walston were each indicted on two counts of Murder in the Second Degree with regard to Tyriek's death. The first count of Murder in the Second Degree charged the defendants with "recklessly" causing the death of Tyriek under circumstances manifesting a cruel, wicked and depraved indifference to human life, by striking Brandi while she was pregnant with Tyriek.[3] Following a bench trial, the trial judge concluded that the State failed to prove beyond a reasonable doubt the requisite state of mind for such a charge.

The issue of whether Jackson and Walston knew that Brandi was pregnant turned on controverted facts and the credibility of witnesses. The evidence was unclear and in dispute as to when Jackson and Walston knew of Brandi's pregnancy or even if they were aware of that fact. Moreover, the trial judge, as the trier of fact, held that "[i]t [was] impossible to state beyond a reasonable doubt what each defendant knew, and at what time they knew it, about [Brandi's] condition."[4] As such, the trial judge found that the evidence was insufficient to establish the level of "recklessness" required by statute for a conviction of Murder in the Second Degree.

Accordingly, the trial judge considered a conviction for the lesser included offense of Manslaughter.[5] The trial judge determined that Jackson's and Walston's conduct demonstrated a conscious disregard of a substantial risk of death to the victim of their assault. The trial court held that the State proved beyond a reasonable doubt that the defendants' "recklessly" caused the death of Tyriek. Consequently, Jackson and Walston were convicted of Manslaughter.

Jackson and Walston contend that the evidence adduced at trial was insufficient to support their Manslaughter convictions. The defendants assert that the State did not present sufficient evidence to prove beyond a reasonable doubt that they knew Brandi was pregnant. By failing to prove such knowledge, the defendants argue that the State did not establish the requisite "reckless" state of mind to uphold their Manslaughter convictions.

■ Both Murder in the Second Degree and Manslaughter require the same "reckless" state of mind defined by section 231(c).[6] A person acts "recklessly" under section 231(c) when the person is "aware of and consciously disregards a substantial and unjustifiable risk that ... will result from [his or her] conduct."[7] Specifically, this definition requires the "conscious creation of risk or, to put it in other terms, conscious disregard of a risk" by a person.[8]

3. Del.Code Ann. tit. 11, § 635(1) (2001).

4. *State v. Hamilton*, No. 9805006798, at 6, 2001 WL 392247 at *2, 2001 Del.Super. Lexis 129 (Del.Super.Apr. 11, 2001).

5. Del.Code Ann. tit. 11, § 206(c); *Ward v. State,* 575 A.2d 1156, 1158 (Del.1990).

6. Del.Code Ann. tit. 11, §§ 632(1), 635(1). "The basic difference between Manslaughter and Murder in the Second Degree ... is that the latter requires a showing that the homicide was committed 'under circumstances which manifest a cruel, wicked and depraved

indifference to human life,' while the former does not." *Waters v. State,* 443 A.2d 500, 502–03 (Del.1982).

7. That risk must be of such a nature and degree that a disregard of it constitutes "a gross deviation from the standard of conduct that a reasonable person would observe in the situation." Del.Code Ann. tit. 11, § 231(c).

8. Delaware Criminal Code with Commentary 30 (1973).

A party, thus, must be "conscious" of a substantial and unjustifiable risk before that party's conduct can be defined as "reckless." The term "conscious" is commonly defined as "subjectively know or felt."[9] Accordingly, the statute ensures that a party subjectively knows of such a risk by requiring that a person is both "aware of" and "consciously disregards" the risk before he or she can act "recklessly."

For a rational trier of fact to find that Jackson and Walston acted "recklessly," the State had to prove beyond a reasonable doubt that the defendants were "aware of" and "consciously disregard[ed]" a substantial and unjustifiable risk of death to Tyriek through their conduct. Here the evidence is in dispute as to what the defendants knew regarding Brandi's pregnancy. If Jackson and Walston did not know that Brandi was pregnant, they could not have been "aware of" and "consciously disregard[ed]" a risk to the unborn fetus or child.[10]

The State's failure to establish beyond a reasonable doubt that Jackson and Walston knew that Brandi was pregnant prevented the State from establishing that the defendants acted "recklessly" in causing the death of Tyriek. Thus, the same factual findings that precluded Jackson and Walston from being convicted of Murder in the Second Degree preclude those defendants from being convicted of Manslaughter. Accordingly, Jackson's and Walston's conviction of Manslaughter must be reversed.

A more difficult question is presented with respect to Hamilton's conduct, as an accomplice, in allegedly causing Tyriek's death. In order for Hamilton to be found liable under section 271, for any degree of homicide, the trier of fact was required to make an individual determination under section 274. That statute provides:

When, pursuant to Section 271 of this title, 2 or more persons are criminally liable for an offense which is divided into degrees, each person is guilty of an offense of such degree as is compatible with that person's own culpable mental state and with that person's own accountability for an aggravating fact or circumstance.

In Hamilton's case, the term "offense" in section 271 and section 274 is construed in pari materia to mean "homicide."[11] The various degrees of homicide are distinguished by the defendant's mental state and the circumstances surrounding the death of the victim. Thus, the trier of fact was required as a matter of Delaware law to consider what degree of homicide was consistent with Hamilton's mental state: First Degree Murder, Second Degree

---

9. Webster's II: New Riverside University Dictionary 300 (3d ed. 1994); see Black's Law Dictionary (7th ed. 1999) (defining "knowing" as "deliberate; conscious"). Where a word is not defined in the Delaware Criminal Code "it has its commonly accepted meaning, and may be defined as appropriate to fulfill the purposes of the provision." Del.Code Ann. tit. 11, § 221(c).

10. The Court notes, however, that on June 10, 1999 the General Assembly enacted legislation making an assault upon a pregnant woman that results in a miscarriage a serious felony. Del.Code Ann. tit. 11, §§ 605, 606.

Under such legislation, a defendant may not raise as a defense the he or she was "unaware that the victim was pregnant." Id. Unfortunately, this legislation was not in effect at the time of the incident involved in this case. Although the current legislation would likely have been applicable to the facts of this case had the law been in effect at the time, the Court must resolve this matter under prior law.

11. Demby v. State, 744 A.2d 976, 979–80 (Del. 2000) (citing Chance v. State, 685 A.2d 351, 357 (Del.1996)); Johnson v. State, 711 A.2d 18, 30 (Del.1998).

Murder, Manslaughter or Criminally Negligent Homicide.[12]

Based on our view of the record, a rational trier of fact could not find the requisite "intentional" state of mind for a First Degree Murder conviction. In addition, it would be difficult for a trier of fact to find the requisite "reckless" state of mind for a conviction of Murder in the Second Degree or Manslaughter. Although Hamilton knew that Brandi was pregnant, she did not "consciously disregard" the risk of an assault on Tyriek since the trial court found that she told the other defendants not to touch Brandi because she was pregnant.

Curiously and ironically, the trier of fact determined that the other defendants had no direct knowledge that Brandi was pregnant, while Hamilton knew of the pregnancy and warned the other defendants not to touch Brandi. This point bears repeating. The record reflects and the trial court found, that while there was no doubt that Hamilton attempted to warn Jackson and Walston about Coleman's pregnancy, the State failed to prove beyond a reasonable doubt that Jackson and Walston comprehended that warning. While not explicit in the trial court's opinion, this dissonance is perhaps best explained by the frenzied atmosphere in which the warning was given.

In addition, Hamilton lacked the requisite state of mind for a conviction of Criminally Negligent Homicide. Under Title 11, section 631 of the Delaware Code, Hamilton could be convicted of Criminally Negligent Homicide if "with criminal negligence, [she] cause[d] the death of [Tyriek]." To act in a "criminally negligent" manner, Hamilton would have "fail[ed] to perceive a risk that ... [death would] result from [her] conduct." [13] If, as the State contends, the fetus is considered a person who could be the object, or victim, of the offense of criminally negligent homicide, the State was required to prove that Hamilton failed to perceive the risk of harm to that person.[14]

As previously noted, Hamilton was relieved of responsibility for manslaughter because she attempted to warn the other defendants, (the principals to whom she is alleged to have been an accomplice), not to touch Brandi. Hamilton's admonition to the other defendants not to touch Brandi extends to any risk of bodily harm, direct or indirect. In short, if Hamilton is relieved of criminal liability because she warned her confederates not to touch Brandi because she was pregnant, her warning to them precludes a state of mind necessary for criminal negligent homicide. As Section 271 requires, her responsibility is measured by her "own mental state." Hamilton cannot be faulted for failing to perceive "a risk" when she actually warned against that risk in advance of the confrontation.

It is inconsistent to relieve the other defendants of criminal responsibility and at the same time impose criminal liability on Hamilton. Criminally negligent homicide cannot be established without proof that the defendant perceived the risk resulting from specific conduct. That perception cannot be established where the evidence demonstrates that Hamilton took affirmative steps to insure that the other

---

12. *Chance v. State,* 685 A.2d at 357, 359. In *Herring v. State,* this Court stated that the crimes of Manslaughter and Criminally Negligent Homicide constituted "degrees" of homicide under section 274. *Herring v. State,* 805 A.2d 872, 874 n. 5, 2002 Del. Lexis 6 at *5 n. 5 (Del.Supr.2002).

13. Del.Code Ann. tit. 11, § 231(d).

14. For purposes of this appeal, we accept the State's contention, *arguendo,* without deciding the specific question of personhood.

defendants were made aware of Brandi's pregnancy, with the intention of protecting her because of her condition. In sum, we conclude that Hamilton's warning to her co-defendants precludes the establishment of the requisite state of mind to support any degree of homicide which was a foreseeable consequence of the assault.

## III

The trial judge acquitted the defendants of Assault Second Degree (Count III of the Indictment) because he concluded that the State failed to prove beyond a reasonable doubt, one essential element of Assault Second Degree—that the victim Brandi Coleman suffered a physical injury, as required by 11 *Del. C.* § 612(a)(1), "which creates a substantial risk of death." 11 *Del. C.* § 222(23). The court based its conclusion on the expert medical evidence presented at trial to the effect that prompt medical treatment received by Brandi precluded a "substantial risk" of dying. The court did conclude that all defendants were guilty of Assault Third Degree because it was clearly established that Brandi suffered "physical injury" to the extent she suffered "pain and impairment of physical condition."

The Superior Court made specific factual findings that both Walston and Jackson physically assaulted Brandi, causing physical injury. With respect to the finding of guilt of Hamilton the Superior Court concluded that she "secured the services" of the other defendants to participate in the fight and transported them to the scene. While this is a somewhat tenuous basis for a conviction of assault given the warnings imparted by Hamilton with respect to Brandi's pregnancy, there is a legal basis for finding Hamilton guilty under the provision of 11 *Del. C.* § 271(2) to the extent she solicited or requested the other defendants to engage in a fight that could result in physical injury to a third

party. Hamilton's solicitude and warning concerning Brandi's pregnancy did not preclude a conviction for recklessly placing her in harm's way of injuries sustained in a fight. 11 *Del. C.* § 611(1).

In sum, we conclude, as a matter of law that all defendants lacked the requisite state of mind to sustain any degree of homicide, even if it is assumed that the fetus could be the victim of a homicide. As to those convictions, the judgment of the Superior Court is REVERSED. For the reasons stated, the convictions of all defendants on the charges of Assault Third Degree are AFFIRMED.

HOLLAND, Justice concurring.

I join in the Court's opinion with regard to Jackson and Walston. I concur in the Court's conclusions with regard to Hamilton.