# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| **STATE OF DELAWARE** | ) | |
| | ) | |
| **v.** | ) | **I.D. No. 1409011585** |
| | ) | |
| **GABRIEL PARDO,** | ) | |
| **Defendant.** | ) | |

Submitted: October 28, 2015
Decided: November 9, 2015

***Upon Defendant's Motion for New Trial***
**DENIED**

***Upon Defendant's Motion for Judgment of Acquittal***
**DENIED**

**<u>MEMORANDUM OPINION</u>**

Sean P. Lugg, Esquire, and Eric H. Zubrow, Esquire, Department of Justice, Wilmington, DE, Attorneys for the State of Delaware.

Joseph A. Hurley, Esquire, Wilmington, DE, Attorney for Defendant.

**Rocanelli, J.**

Defendant Gabriel Pardo was convicted of Manslaughter, Leaving the Scene of a Collision Resulting in Death ("Leaving the Scene"), Reckless Driving, and six counts of Endangering the Welfare of a Child after a nine-day non-jury trial. At the start of the trial, Defendant made a motion to dismiss the charge of Leaving the Scene on the grounds that the statute making it a crime for a driver to leave the scene of a motor vehicle accident resulting in death ("LSCRD Statute")[1] is unconstitutional.[2] At the conclusion of the trial, the Trial Court made findings of fact pursuant to Rule 23(c) of the Delaware Superior Court Rules of Criminal Procedure, denied Defendant's motion to dismiss, and found Defendant guilty of all charges.[3] Sentencing is scheduled for November 20, 2015.

On October 7, 2015, Defendant filed a motion for a new trial as to the conviction for Leaving the Scene and a motion for judgment of acquittal as to convictions for all charges except Reckless Driving.[4] The State filed responses in opposition to Defendant's motions. This is the Court's ruling on Defendant's motions for a new trial and for judgment of acquittal.

## I. Defendant's Motion for a New Trial

---

[1] 21 *Del. C.* § 4202(a).

[2] On September 22, 2015, the day Defendant's non-jury trial began, Defendant filed a motion to dismiss the charge of Leaving the Scene.[2] On September 24, 2015, Defendant filed a Memorandum of Law with the Court to supplement his legal arguments.

[3] On October 2, 2015, the Trial Court made findings of fact, stated its conclusions of law, and rendered a verdict of guilty on all charges. The Court also denied Defendant's motion to dismiss the charge of Leaving the Scene. The Court adopts those findings here.

1

The LCSRD Statute affirmatively places the responsibility on a driver involved in a collision to stop and inquire at the scene of the accident whether anyone was injured or killed.[5] The Delaware legislature categorizes this crime as a felony offense and requires that minimum mandatory jail time of at least 6 months be imposed for convictions.[6]

According to Defendant, the LSCRD Statute is unconstitutional because minimum mandatory prison time must be imposed for a conviction even though the State does not have to prove beyond a reasonable doubt that a defendant had a certain mental state or *mens rea*. According to Defendant, such a strict liability statute is unconstitutional. The State opposes Defendant's motion for a new trial on the grounds that the LSCRD Statute is constitutional on its face and as applied to Defendant.

## A. The LCSRD Statute is constitutional on its face and as applied to Defendant.

As the LSCRD Statute is written, intent is not an element of the offense. Nevertheless, the LSCRD Statute is constitutional for the following reasons:

---

[5] 21 *Del. C.* § 4202(a).
[6] 21 *Del. C.* § 4202(c).

(1) Legislation, such as the LSCRD Statute, is presumed constitutional;[7] and any and all reasonable doubts as to the validity of the law must be resolved in favor of the constitutionality of the legislation.[8]

(2) The Delaware Supreme Court has held that the question of intent with respect to statutory crimes is a decision for the legislature and the mere absence of a state of mind element does not render a statute unconstitutional.[9] Rather, according to the Delaware Supreme Court, "a violation of the statute may itself constitute the offense and furnish the intent."[10]

(3) The United States Supreme Court has applied a two-prong test to determine whether a strict liability offense violates a defendant's due process rights.[11] Under the test laid out in *Morissette*, "a strict liability offense is not deemed to violate the due process clause where (1) the penalty is relatively small, and (2) where conviction does not gravely besmirch a defendant's reputation."[12] The two-prong test is satisfied here because a six-month minimum mandatory prison term is a relatively small penalty and a conviction for this offense is not such that a defendant's reputation would be "gravely besmirched."

---

[7] *Shapira v. Christiana Care Health Servs., Inc.*, 99 A.3d 217, 223 (Del. 2014) (citing *Hoover v. State*, 958 A.2d 816, 821 (Del. 2008)); *Taylor v. State*, 76 A.3d 791, 797 (Del. 2013). *See also Snell v. Engineered Sys. & Designs, Inc.*, 669 A.2d 13, 17 (Del. 1995) (finding that Delaware has a "strong judicial tradition" that supports the constitutionality of legislation).

[8] *Hoover*, 958 A.2d at 821 (citing *McDade v. State,* 693 A.2d 1062, 1065 (Del. 1997)).

[9] *See Hoover*, 958 A.2d at 821.

[10] *Id.*

[11] *See Morissette v. United States*, 342 U.S. 246, 256 (1952).

[12] *Id.*

3

(4) Although the Delaware Supreme Court has not addressed the constitutionality of the LSCRD Statute directly, the Court has upheld the constitutionality of Operation of a Motor Vehicle Causing Death even though incarceration may be imposed without a finding of a mental state.[13] While the LSCRD Statute is distinguishable from Operation of a Motor Vehicle Causing Death because the LSCRD Statute requires imposition of a minimum mandatory term of imprisonment, in *State v. Avila-Medina*, the Delaware Supreme Court surveyed the strict liability criminal laws of other states with significant penalties that had been held constitutional and that analysis is applicable here.[14]

(5) The LSCRD Statute was enacted as a felony offense fourteen years ago, and has not been declared unconstitutional. Although not solely dispositive of its constitutionality, the Delaware Supreme Court has held that "[w]hen a statute has been applied by courts and state agencies in a consistent way for a period of years, then that is strong evidence in favor of that interpretation."[15]

(6) As the Delaware Supreme Court noted in *Hoover*, a statute lacking a mental state may be constitutional where it is intended to provide for the safety and welfare of the public, such as motor vehicle statutes.[16] As a motor vehicle offense,

---

[13] *See* 21 *Del. C*. § 4176A.
[14] *See State v. Avila-Medina*, 2009 WL 2581874, at *3 (Del. Super. Mar. 5, 2009)
[15] *State v. Barnes,* 116 A.3d 883, 890 (Del. 2015).
[16] *Hoover*, 958 A.2d at 822 ("In *Morissette v. United States,* the United States Supreme Court held that statutes that relate to the public safety and welfare and that provide for the punishment of a person who lacked intent to commit a crime do not violate due process.").

4

the LSCRD Statute was enacted for public safety and therefore does not require a specific state of mind for a finding of guilty.

Accordingly, for these reasons, the LSCRD Statute is constitutional as written. Moreover, in the alternative, the LSCRD Statute is constitutional as applied to Defendant. The record evidence presented at trial demonstrated beyond a reasonable doubt that Defendant was the driver of a car that was involved in a collision; that he *knew* he was in a collision; and that he *knowingly* and *intentionally* left the scene of the collision without first determining whether anyone was injured or killed. Defendant's claim that he did not know he hit a person is not relevant. Defendant conceded that he *knew* he had been in an accident, and he admitted that he drove on without stopping. The requirement to stop at the scene is not conditional upon whether the driver knew someone had been injured or killed. Rather, public policy concerns mandate that drivers involved in an accident are required to stop at the scene and determine whether a person was injured or killed as a result of the accident. Therefore, due process is satisfied as the LCSRD Statute is applied to Defendant on the facts established beyond a reasonable doubt at trial.[17]

---

[17] *See* 11 *Del. C.* § 251(a)-(c):
    (a) No person may be found guilty of a criminal offense without proof that the person had the state of mind required by the law defining the offense or by subsection (b) of this section.

5

## B. Defendant is not entitled to a new trial.

A Motion for New Trial may be granted upon a motion by the Defendant "if required in the interest of justice."[18] If the trial was without a jury, the Court may "vacate the judgment if entered, take additional testimony and direct the entry of a new judgment."[19] A motion for a new trial is within the sound discretion of the trial court.[20] Viewing the evidence in the light most favorable to the State,[21] a motion for new trial will not be granted "if there was some probative evidence upon which a verdict of guilty could reasonably be based."[22] The Court must refrain from granting the motion unless the verdict "appears to be against the great weight of the evidence."[23]

---

(b) When the state of mind sufficient to establish an element of an offense is not prescribed by law, that element is established if a person acts intentionally, knowingly or recklessly.

(c) It is unnecessary to prove the defendant's state of mind with regard to: (1) Offenses which constitute violations, unless a particular state of mind is included within the definition of the offenses; or (2) Offenses defined by statutes other than this Criminal Code, insofar as a legislative purpose to impose strict liability for such offenses or with respect to any material element thereof plainly appears.

[18] Super. Ct. Crim. R. 33 (A motion for a new trial based on grounds other than newly discovered evidence shall be made within seven days of the verdict). Because Defendant filed his motion for a new trial five days after the Court delivered its verdict, Defendant's motion is timely.

[19] *Id.*

[20] *State v. Rebarchak*, 2002 WL 1587855, at *1 (Del. Super. June 20, 2002) (citing *Hutchins v. State*, 153 A.2d 204 (Del.1959)).

[21] *Id.* (citing *Price v. State*, 1996 WL 526013 (Del. Aug. 19, 1996)).

[22] *Id.* (citing *State v. Biter*, 119 A.2d 894 (Del. Super. 1955)).

[23] *Id.* (citing *Storey v. Camper*, 410 A.2d 458 (Del. 1979)).

With respect to the Court's guilty verdict for Leaving the Scene, Defendant contends that the Court "chose to rework, rewrite and amend" the Statute.[24] Defendant is incorrect. The Court first ruled that the LSCRD Statue is constitutional as written based on United States Supreme Court decisional law, Delaware Supreme Court decisional law, and the legislative intent to protect public safety. For the reasons stated, the strict liability standard meets constitutional standards for the crime of Leaving the Scene. Only after the Court ruled that the LSCRD Statue was constitutional on its face did the Court address the Statute as applied to Defendant to find the Statute was constitutional as applied to Defendant because Defendant acted knowingly.[25]

The interest of justice does not entitle Defendant to a new trial. The evidence demonstrated beyond a reasonable doubt that, on September 12, 2014, Defendant operated a motor vehicle; while operating the motor vehicle, Defendant was involved in a collision with Phillip Bishop; the collision resulted in the death of Mr. Bishop; and Defendant failed to stop his vehicle immediately at the scene of the collision.[26] Accordingly, there was probative evidence upon which a verdict of

---

[24] Defendant's Mot. for a New Trial para. 1 (Oct. 7, 2015).
[25] The Court also considered a Court of Common Pleas decision that held that a defendant must "know" he was involved in an accident. *See State v. McDonnell*, 2006 WL 759703 at *2 (Del. Com. Pl. Mar. 23, 2006).
[26] *See* 21 Del. C. § 4202(a).

7

guilty for Leaving the Scene was reasonably based. Defendant is not entitled to a new trial for the charge of Leaving the Scene.

## II. Defendant's Motion for Judgment of Acquittal

Defendant seeks a judgment of acquittal with respect to the convictions for Manslaughter, Leaving the Scene, and six counts of Endangering the Welfare of a Child.[27] Superior Court Criminal Procedural Rule 29 provides that a defendant may move for an entry of judgment of acquittal for one or more charges if "the evidence is insufficient to sustain a conviction of such offense or offenses."[28] Defendant's motion was filed in a timely manner.[29]

The standard of review for a motion for judgment of acquittal is whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find a Defendant guilty beyond a reasonable doubt of all the elements of the

---

[27] Defendant has not filed a Motion for Judgment of Acquittal with respect to the conviction for Reckless Driving. The Court adopts those findings here. Although it is not the subject of Defendant's motions, the Court found that the State satisfied its burden of proof as to Reckless Driving, Count Nine of the Indictment, and the Court also found Defendant guilty of that charge.

[28] Super. Ct. Crim. R. 29(a).

[29] A motion for judgment of acquittal is governed by Rule 29 which provides that such motions should be presented at the close of the State's evidence or within seven (7) days after the fact-finder is discharged.[29] Because Defendant filed his Motion for Judgment of Acquittal five (5) days after the Court delivered its verdict, Defendant's Motion is timely.

crime.[30]  The trier of fact does not distinguish between direct and circumstantial evidence in making its determination.[31]

## A. The facts established at trial support the convictions.

As fact-finder, the Court followed the direction that we regularly give to our juries when assessing the evidence and the credibility of witness testimony:

> I must judge the believability of each witness and determine the weight to be given to all trial testimony.  I considered each witness's means of knowledge; strength of memory and opportunity for observation; the reasonableness or unreasonableness of the testimony; the motives actuating the witness; the fact, if it was a fact, the testimony was contradicted; any bias, prejudice or interest, manner of demeanor upon the witness stand; and all other facts and circumstances shown by the evidence which affect the believability of the testimony.  After finding some testimony conflicting by reason of inconsistencies, I have reconciled the testimony, as reasonably as possible, so as to make one harmonious story of it all.  To the extent I could not do this, I gave credit to that portion of testimony which, in my judgment, was most worthy of credit and disregarded any portion of the testimony which, in my judgment, was unworthy of credit.[32]

As fact-finder, the Court followed the instruction with respect to recklessness agreed upon by the parties during the prayer conference:

> "Recklessly" means that Defendant was aware of and consciously disregarded a substantial and unjustifiable risk that victim's death would result from Defendant's conduct.  The State must demonstrate that the risk was of such a nature and degree that Defendant's

---

[30] *Williamson v. State*, 113 A.3d 155, 158 (Del. 2015); *Cline v. State*, 720 A.2d 891, 892 (Del. 1998) (citing *Davis v. State*, 706 A.2d 523, 524 (Del. 1998); *Monroe v. State*, 652 A.2d 560, 563 (Del. 1995)).

[31] *Cline*, 720 A.2d at 892 (citing *Davis*, 706 A.2d at 524; *Hoey v. State*, 689 A.2d 1177, 1181 (Del. 1997); *Skinner v. State*, 575 A.2d 1108, 1121 (Del. 1990)).

[32] *Dionisi v. DeCampli,* 1995 WL 398536, *1 (Del. Ch. June 28, 1995).

disregard of it was a gross deviation from the standard of conduct that a reasonable person would observe under the same circumstances.

Additionally, the Court considered statutory and decisional law addressing recklessness. Specifically, the Delaware Code defines a reckless state of mind as follows: "[a] person acts recklessly with respect to an element of an offense when the person is aware of and consciously disregards a substantial and unjustifiable risk that the element exists or will result from the conduct. The risk must be of such a nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts recklessly with respect thereto."[33] Further, in *Hamilton v. State*, the Delaware Supreme Court provided that an individual must be "conscious" of a substantial and unjustifiable risk before the individual's conduct can be considered "reckless."[34] The Court defined "conscious" as to "subjectively know or fe[e]l."[35] The Delaware Superior Court, in a civil case, has defined reckless conduct as "conscious indifference" that amounts to an "I don't care attitude."[36] The same court explained that reckless conduct occurs "when a person, with no intent to cause harm, performs an act so unreasonable that he or she knows

---

[33] 11 *Del. C.* § 231; *see also Hamilton v. State*, 816 A.2d 770, 773 (Del. 2003) (following the Delaware Code's definition of reckless).
[34] 816 A.2d 770, 774.
[35] *Id.*
[36] *Williams v. Manning*, 2009 WL 960670, at *17 (Del. Super. Mar. 13, 2009).

10

or should know that there is an imminent likelihood of damage or injury that can result."[37]

At trial, the State presented testimony of numerous witnesses, including Mr. Bishop's co-worker who saw Mr. Bishop leave work by bicycle on the night of the accident; three witnesses who arrived at the scene of the accident; three police officers, including an officer with expertise in accident reconstruction;[38] Defendant's co-worker who had dinner and alcoholic drinks with Defendant on the day of the accident; the individual who served Defendant food and alcoholic drinks prior to the accident; an employee from the DNA Unit of the Delaware Division of Forensic Sciences who tested samples taken from the accident scene and Defendant's vehicle; Defendant's ex-wife; and two of Defendant's three children who were passengers in the motor vehicle driven by Defendant at the time of the accident. Additional evidence was also offered for the Court's consideration by the State, including Mr. Bishop's damaged bicycle, as well as still photographs and video depicting the crime scene and the damage to Defendant's vehicle, and autopsy photographs.

---

[37] *Id.*

[38] With respect to the expert opinion offered by Cpl. Hussong, pursuant to Delaware Rule of Evidence 702, the Court found Cpl. Hussong is a witness qualified as an expert by knowledge, skill, experience, training and education and that the three-part test was likewise satisfied in that: (1) the testimony was based on sufficient facts and data; (2) the testimony was the product of reliable methods and principles; and (3) the witness applied the methods and principles reliably to the facts of the case.

Defendant elected to present a defense. Defendant testified as a witness, and also presented the testimony of his ex-wife and the accident reconstruction expert as witnesses (both of whom were re-called by Defendant in his own case-in-chief). Defendant also called three additional witnesses: a private investigator, an individual who works on behalf of Defendant's counsel, and an employee of Del DOT. Additional evidence was also offered for the Court's consideration by Defendant, including still photographs, video, and drawings depicting the roadway crime scene, as well as DELDOT incident reports.

In considering the evidence presented, assessing the evidence and the credibility of witness testimony, the Court made findings of fact, in pertinent part, as follows:

- On September 12, 2014, during a period of approximately three and a half hours (from at about 3:30 p.m. until at about 7:00 p.m.), Defendant consumed a meal, several glasses of water, one frozen margarita, part of a second frozen margarita, three beers, and two shots of tequila.
- After consuming the alcoholic beverages, Defendant operated a motor vehicle in New Castle County, Delaware.
- Defendant was "under the influence" of alcohol at the time of the accident.[39]

---

[39] It is not an element of the offense of Manslaughter or any other offense with which Defendant was charged that Defendant was impaired or intoxicated and the Court expressly stated that *it did not make a legal finding* that Defendant was impaired or intoxicated at the time of the accident. Rather, the Court found that, after consuming 6-7 alcoholic drinks prior to the operating a motor

- When driving upon Brackenville Road in the northbound lane at approximately 8:30 p.m., Defendant's three sons (ages five (5), eight (8), and ten (10)) were in the vehicle.

- Brackenville Road is a two-way roadway. A double yellow line divides the northbound and southbound lanes. There is ample space in both directions to safely maneuver a vehicle within the lane of travel. Several witnesses described Brackenville Road as dangerous, including Defendant. Defendant was very familiar with the roadway.

- While driving on Brackenville Road, Defendant exceeded the posted speed limit of thirty-five (35) miles per hour.

- Prior to the collision, Defendant's sons expressed concern about Defendant's speed and expressed that Defendant was operating the vehicle in a weaving fashion.

- At approximately 8:30 p.m., Defendant consciously and purposely placed his vehicle over the double yellow line. As such, Defendant was not travelling within his designated lane of travel.

- Mr. Bishop was lawfully riding his bicycle on Brackenville Road in his designated lane of travel – the southbound lane. Mr. Bishop was equipped with appropriate lighting on his bicycle and his person. Among the debris from the collision, Mr. Bishop's illuminated equipment was found.

---

vehicle within 1.5-5 hours prior to the accident, Defendant was "under the influence" of alcohol, consistent with Delaware statutory law which provides that a person is "under the influence" of alcohol when that person is "less able than the person would ordinarily have been, either mentally or physically, to exercise clear judgment, sufficient physical control, or due care in the driving of a vehicle." *See* 21 Del. C. § 4177(c)(11).

13

- Defendant's vehicle and Mr. Bishop's bicycle had a head-on-head collision in the southbound lane of Brackenville Road while Mr. Bishop was travelling southbound in the southbound lane and Defendant was travelling northbound in the southbound lane.

- As a result of the collision, the front of Mr. Bishop's bicycle collapsed while the front wheel twisted. Upon impact, the bicycle flipped onto the hood of Defendant's vehicle, breaking the handlebars and leaving marks across the hood of the vehicle. Upon impact, Mr. Bishop was violently separated from his bicycle and thrown by force into the windshield of Defendant's vehicle in two places – rendering the windshield broken and splintered in a spider-web fashion from two points of impact. After Mr. Bishop smashed into the windshield in two places, Mr. Bishop was thrown over the roof of Defendant's vehicle in full view of the rear seat passenger, Defendant's son, who exclaimed, "Dad you hit someone. You killed a person." The collision caused significant damage to Defendant's vehicle.

- After the collision, Defendant's vehicle drove off the road, leaving tire marks on the unpaved shoulder and dirt path adjacent to the southbound roadway.

- Mr. Bishop's body was further vaulted across the rear hood of the vehicle and came to rest in the path of the vehicle which passed under Mr. Bishop's bruised and broken body on the dirt shoulder of the southbound lane.

- Defendant knew he had been in a collision.

- Defendant did not stop to assess the scene of the collision to determine whether any person was injured or killed.

14

- After the collision, Defendant drove his vehicle from the unpaved shoulder onto the northbound lane.

- Defendant admitted that his vehicle was not safe to drive after the collision.

- Defendant left the scene of the accident and continued driving approximately three-tenths of a mile to his residence.

- Unlike Defendant who did not stop to render aid to the mortally wounded Mr. Bishop, the first three people who came upon the scene of the accident stopped to ascertain whether someone was hurt. They contacted emergency personnel by dialing 911. Patrick Ritchie first interacted with Mr. Bishop and testified that Mr. Bishop exhaled twice in response to Mr. Ritchie's efforts. By the time Deirdre Ritchie, a nurse, approached Mr. Bishop, Mr. Bishop was still warm but had no pulse and was unresponsive. While Deirdre Ritchie stayed by Mr. Bishop's side, Ms. Shannon Athey directed traffic and Patrick Ritchie briefly left the scene to summon help.

- Upon arrival, New Castle County Police Department officers determined that Mr. Bishop was deceased and therefore no life-saving measures were taken.

- Mr. Bishop died from blunt force trauma inflicted upon him by Defendant's vehicle.

- Upon returning safely to his home, Defendant assessed the damage to his vehicle and found no evidence of foliage or organic matter consistent with a collision of the vehicle with a tree branch.

- While there was no evidence of a tree or branch striking the vehicle, what *was* left behind on the vehicle was Mr. Bishop's DNA on the

15

edge of the sunroof of Defendant's vehicle, as well as scuff marks from the handlebars of the bicycle on the vehicle's hood, pieces of fabric from Mr. Bishop's shirt on the vehicle, and scuff marks across the roof which the Court inferred were made by Mr. Bishop's helmet that remained strapped to his head when Mr. Bishop was vaulted over the roof of the vehicle.

- Defendant did not report the accident to the police until the next morning.

Defendant's consciousness of guilt was established by (i) leaving the scene of the accident; (ii) reluctance to report the accident to his employer; and (iii) instinct to "hide the car" after the accident.[40] Furthermore, based on the evidence at trial and the decisional law, the Court found that Defendant acted recklessly.[41] Specifically, the Court made the following findings of fact with respect to Defendant's recklessness:

- There was no evidence of Defendant braking or otherwise attempting to avoid the collision.
- Based on expert reconstruction testimony, the collision occurred in the southbound lane of Brackenville Road while Defendant was driving northbound in the southbound lane with his vehicle positioned over the center line in the lane designated for oncoming traffic.

---

[40] This evidence was considered for a limited purpose only – to show consciousness of guilt – and not as proof that Defendant is a bad person who probably committed the offense.

[41] Because the Court determined that Defendant acted recklessly and that the State established all elements of Manslaughter beyond a reasonable doubt, the Court did not consider the lesser included offense of criminally negligent homicide. *See* 11 *Del. C.* § 631.

- Defendant conceded in open court that while driving by straddling the double yellow line may be safer for him, it does not take into account, nor is it safer for, other persons, vehicles, or bicycles traveling in the opposite direction.[42]
- Defendant made a conscious decision to use more of the roadway than was legally available to him.
- The risk of injury to persons travelling southbound was of such a nature and degree that placement of Defendant's vehicle over the center line was a gross deviation from the standard of conduct that a reasonable person would observe in that situation.
- Defendant was exceeding the speed limit after consuming alcohol.

## B. Defendant is not entitled to judgment of acquittal.

Defendant is not entitled to a judgment of acquittal. The evidence was sufficient to support judgments of conviction as follows:

## 1. Defendant is guilty of Manslaughter.

With respect to Defendant's state of mind, the Court found that Defendant was reckless. Defendant was aware of and consciously disregarded a substantial and unjustifiable risk that a person's death would result from Defendant's conduct.

---

[42] The State must prove beyond a reasonable doubt that Defendant was aware, or should have been aware, of the result of his conduct. With respect to the facts presented at trial, the State met its burden even where the actual result differed from the probable result only because a difference person was injured or affected. In other words, Defendant did not have to foresee specifically that Phillip Bishop would be riding his bicycle in the opposite lane of travel. Rather, the Court must compare the actual result with the probable result that someone might be injured by Defendant. The Court found that there was a sufficient relationship between the probable result and the actual result such that the State met its burden of proof.

The risk posed by Defendant's driving over the center lane while exceeding the speed limit after consuming alcohol is of such a nature and degree that Defendant's disregard of the risk constituted a gross deviation from the standard of conduct that a reasonable person would observe in the situation. Defendant did recklessly cause the death of Mr. Bishop. Accordingly, with respect to Count One, Defendant is guilty of Manslaughter in violation of 11 *Del. C.* § 632.

### 2. Defendant is guilty of Leaving the Scene.

Defendant was the driver of the vehicle involved in a collision resulting in the death of Mr. Bishop. Defendant knew he was in a collision. Defendant had a legal obligation to stop at the scene and render reasonable assistance to Mr. Bishop or contact law enforcement or emergency personnel and await their arrival. Defendant left the scene without rendering aid or contacting emergency personnel. Accordingly, with respect to Count Two, Defendant is guilty of Leaving the Scene in violation of 21 *Del. C.* § 4202(a).

### 3. Defendant is guilty of six counts of Endangering the Welfare of a Child.

Defendant committed the crimes of Manslaughter and Leaving the Scene in the presence of each of his three sons. At the time of the accident, each of Defendant's sons were minor children under the age of eighteen. Defendant is the parent of each of the three children. Each of the children was a passenger in the vehicle when the crimes took place and witnessed the crimes by sight and/or

18

sound. Defendant's reckless act which formed the element of manslaughter was injurious to the physical, mental, and/or moral welfare of each child. In addition, Defendant knew that each of his sons had witnessed the crimes committed. Accordingly, with respect to Counts Three through Eight, Defendant is guilty of six counts of Endangering the Welfare of a Child in violation of 11 *Del. C.* § 1102.

## III. Conclusion

The Court finds that Defendant is not entitled to a new trial or a judgment of acquittal. The Court made findings of fact based on the entire record, including all direct and circumstantial evidence, and the references therefrom, and found that the State met its burden of proving beyond a reasonable doubt the elements of Manslaughter with respect to Count One of the Indictment, Leaving the Scene of a Collision Resulting in Death with respect to Count Two of the Indictment, Endangering the Welfare of a Child with respect to Counts Three through Eight of the Indictment.

Sentencing is scheduled for November 20, 2015.

**NOW, THEREFORE, this 9th day of November, 2015, Defendant's Motion for a New Trial and Motion for Judgment of Acquittal, are hereby DENIED.**

**IT IS SO ORDERED.**

*Andrea L. Rocanelli*

_____
**The Honorable Andrea L. Rocanelli**

19